# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**PETER N. MORSE, et al.,**

  **Plaintiffs,**

 v.                **Civil Action 2:16-cv-689**
                   **Judge Michael H. Watson**
                   **Magistrate Judge Jolson**

**SPECIALIZED LOAN**
**SERVICING, LLC,**

  **Defendant.**

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiffs' second Motion for Attorneys' Fees. (Doc. 40). For the reasons that follow, it is **RECOMMENDED** that the Motion be **GRANTED IN PART and DENIED IN PART**, for a total award of $27,754.30 in attorneys' fees.

## I. BACKGROUND

Plaintiffs initiated this action on July 15, 2016, alleging Defendant Specialized Loan Servicing, LLC ("SLS") violated the Fair Debt Collection Practices Act ("FDCPA") and Real Estate Settlement Procedures Act ("RESPA"). (Doc. 1). Plaintiffs amended their Complaint on November 23, 2016. (Doc. 13).

On June 13, 2017, Defendant tendered an offer of judgment pursuant Rule 68 of the Federal Rules of Civil Procedure. (*See* Doc. 34). More specifically, Defendant offered that a judgment be entered against it for $3,000 in statutory damages plus reasonable attorneys' fees. (*Id.*). Plaintiffs accepted Defendant's offer on June 27, 2017 (*id.*), and the Court entered judgment in Plaintiffs' favor on June 28, 2017 (Doc. 35).

Counsel for Plaintiffs filed the first Motion for Attorneys' Fees on August 4, 2017. (Doc. 36). In response, Defendant asked the Court to reduce the amount of fees, on the ground that the request was unreasonable. (Doc. 37). Upon review of the ripe Motion, the District Judge found certain fee categories proper and denied others with prejudice. (Doc. 39). For example, the District Judge ruled that Plaintiffs could not recover attorneys' fees for any of the work performed in the underlying foreclosure case or where there was no description of the work performed in the attorneys' time records. (*Id.* at 1–2). The District Judge directed Plaintiffs' counsel to "scrutinize and adjust their time records in compliance with [the] Opinion and Order," and the parties were encouraged to settle the fees issue extrajudiciously, if possible. (*Id.* at 3). Additionally, any re-filed motion for attorneys' fees was referred to the undersigned. (*Id.*).

Plaintiffs' counsel filed the second Motion for Attorneys' Fees on December 1, 2017. (Doc. 40). Defendant opposed the Motion (Doc. 43), and Plaintiffs replied (Doc. 44). Thus, the Motion is now ripe for resolution.

**II. STANDARD**

When determining reasonable attorneys' fees, "[i]t is well settled that the 'lodestar' approach is the proper method[.]" *Barrett v. Green Tree Servicing*, 214 F. Supp. 3d 670, 674 (S.D. Ohio 2016) (quoting *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995)). The lodestar approach takes into consideration "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). While there is a "strong presumption" that this lodestar figure represents a reasonable fee, *Ousley v. Gen. Motors Ret. Program for Salaried Emp.*, 496 F. Supp. 2d 845, 850 (S.D. Ohio 2006) (citing *Hensley*, 461 U.S. at 433), the petitioning attorney bears the burden of proving that the number of hours

expended and the rates claimed were reasonable. *See e.g.*, *Wilson v. Bridge Overlay Sys., Inc.*, No. 2:14-CV-156, 2016 WL 164056, at *1 (S.D. Ohio Jan. 14, 2016) (citing *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999)). Further, the product of reasonable hours times a reasonable rate does not end the inquiry, as "the district court has discretion in determining the amount of a fee award" and other considerations may lead the court "to adjust the fee upward or downward." *Hensley*, 461 U.S. at 434; *see also Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) ("Once the lodestar figure is established, the trial court is permitted to consider other factors, and to adjust the award upward or downward to achieve a reasonable result.") (citation omitted).

## III. DISCUSSION

Plaintiffs' second Motion reduced the initial request from $38,524.32 in attorneys' fees (*see* Doc. 36) to $37,192.87 for a total of 181.19 hours. (Doc. 40 at 1). Defendant maintains the modified request is still unreasonable because the hourly rate and time expended are excessive. (*See* Doc. 43).

### a. Hourly Rate

In determining what constitutes a reasonable hourly rate, "courts use as a guideline the prevailing market rate, defined as the rate that lawyers of *comparable skill and experience* can reasonably expect to command within the venue of the court of record." *Geier*, 372 F.3d at 791 (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)) (emphasis added). In an attorneys' fees case, "the primary concern is that the fee awarded be 'reasonable.'" *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007) (citations omitted). "A reasonable fee is 'adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.'" *Id.* (quoting *Geier*, 372 F.3d at 791). As the Sixth Circuit has explained,

the appropriate rate is not necessarily the exact rate of a particular firm, but the market rate in the venue sufficient to encourage competent lawyers in the relevant community to undertake legal representation. *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). A district court may look to "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Pro. & Cas. Ins.*, 436 F. App'x 496, 499 (6th Cir. 2011). Furthermore, while the district court may take into consideration an attorney's skill level in identifying the market rate, this Circuit holds that "reasonable" fees need not be "liberal" fees, and that "[s]uch fees are different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region." *Coulter*, 805 F.2d at 149.

*The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 715–16 (6th Cir. 2016).

Here, Plaintiffs offer the affidavit of attorney Troy Doucet of Doucet & Associates Co., L.P.A., which states generally that "[b]ased on [his] experience and review of attorney fee billing rates for Central Ohio, [he] believe[s] that the billing rates and hours worked reflected in the fee report are reasonable for the type and nature of work performed [] in light of each attorney's experience and knowledge." (Doc. 36-1 at 2). This affidavit alone, however, is insufficient to support a conclusion that the rates of the seven attorneys and five paralegals who worked on this case were reasonable. *Ousley*, 496 F. Supp. 2d at 850 (citing *Geier*, 373 F.3d at 791); *see also Toliver v. JBS Plainwell, Inc.*, No. 1:11-CV-302, 2016 WL 165031, at *6 (W.D. Mich. Jan. 14, 2016) (noting that because affidavits provided by attorneys "provide[d] nothing . . . to substantiate the reasonableness of the rates they seek; nor d[id] they offer anything to suggest that these rates [were] in line with market rates in [the geographical area] for lawyers of similar ability and experience," they were not sufficient support for attorneys' fees).

Plaintiffs also rely on a survey published by the Ohio State Bar Association (the "OSBA survey") "for the contention that "the average billable rate for a consumer law attorney in Ohio is $341 per hour." (Doc. 36 at 4 (citing Doc. 36-5 at 40)). Plaintiffs contend that because "[t]he average billable rate for the attorneys on this case is roughly $204 per hour," the rates must be

4

reasonable. (*Id.*). Plaintiffs' logic, however, is flawed. First, by the Court's calculation, the average billable rate for the attorneys on this case was closer to $230, not $204. (*See* Docs. 40-2, 42). Second, the $341 billable rate mentioned in the OSBA survey fails to take into account each attorney's experience and the geographical location in which the attorney practices.

As Defendant notes, seven attorneys billed time in this litigation "of which six had a year of experience or less at the time they worked on [this matter]. Moreover, four of those attorneys were admitted while the case was pending." (Doc. 43 at 9). The OSBA survey Plaintiffs rely on provides that the mean billing rate for an attorney with such experience is $153. (Doc. 36-5, at 39). Here, the first- and second-year attorneys billed between $195 and $245. (*See* Doc. 42). As for the seventh attorney, Mr. Gerling, it appears that he had five to six years of experience and billed at a rate of $280 and $350. According to the OSBA survey, the mean billing rate of an attorney with six to ten years practice experience was $207. (Doc. 36-5, at 39). Finally, the OSBA survey reflects that the mean hourly rate for attorneys in an office in Central Ohio is $187 per hour, which is lower than any rate billed by any attorney on this case. (*Id.*).

Similarly, five paralegals billed at rates between $95 and $148 per hour. (Doc. 42). Based on the resumes submitted by Plaintiffs, it appears that four of the paralegals had no paralegal experience prior to joining Mr. Doucet's firm. Additionally, it is not clear when any of the paralegals actually joined the firm, thus making it impossible for the Court to determine their exact level of experience. In the OSBA survey, a paralegal with no experience typically earns less than $80 per hour. (Doc. 36-5 at 41 (finding that more than 58% of paralegals with no experience make $80 or less an hour)). Moreover, the fee agreement provides that the hourly rates of paralegals are generally "$65-115 per hour." (Doc. 36-2, at 1). Plaintiffs offer no explanation for why one paralegal billed at a rate of $148/hour.

5

Based on the foregoing, the hourly rates requested are a concern—one that has been shared in other cases involving Plaintiffs' counsel. *See Barrett*, 214 F. Supp. 3d at 674 (noting that the Court was concerned "about the reasonableness of the hourly rates requested by Plaintiff's attorneys" because "the fee agreement presented to the Court represents that Mr. Doucet's agreed hourly rate" was less than what the firm ultimately charged). Applying the Court's own knowledge and experience and based upon the attorneys' and paralegals' experience level and geographical location, the Court **RECOMMENDS** an across-the-board reduction of 20% in all hourly rates *See Szeinbach v. Ohio State Univ.*, No. 2:08-CV-822, 2017 WL 2821706, at *5 (S.D. Ohio June 30, 2017). Thus, the Court **RECOMMENDS** that the $37,192.87 in attorneys' fees sought for 181.19 hours worked be **REDUCED** by $7,438.57.

b. **Hours Expended**

The next step in the lodestar method is to determine the number of compensable hours claimed by Plaintiffs' counsel. *See Satgunam v. Basson*, No. 1:12-CV-220, 2017 WL 3634014, at *4 (W.D. Mich. Aug. 24, 2017). Although courts are required to exclude from the lodestar calculation hours that were not reasonably expended, "[c]ourts are not required to act as 'green-eyeshade accountants' and 'achieve auditing perfection.'" *Szeinbach*, 2017 WL 2821706, at *2 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011) (citing Hensley, 461 U.S. at 433)). Rather, courts must simply do "rough justice." *Id.* (quoting *Fox*, 563 U.S. at 838.).

Defendant argues the hours expended by Plaintiffs' attorneys on various components of this litigation—specifically, written discovery, initial disclosures, attorneys' fees briefing, and drafting of the complaint and amended complaint—are excessive. (Doc. 43 at 3–7). Further, Defendant alleges that, despite the District Judge's previous directive, Plaintiffs seek fees for communications that dealt solely with the foreclosure case, and not this matter. (*Id.* at 6).

Finally, Defendant claims Plaintiffs' billing descriptions are too vague. (*Id.* at 6, 11–12). Accordingly, Defendant requests that "Plaintiffs' fee award [] be drastically reduced" from what is requested. (*Id.* at 12). The Court addresses each issue in turn.

*1. Written Discovery*

Defendant asserts that the 19.4 hours Plaintiffs' counsel claims to have spent on written discovery is unreasonable because it is duplicative. Defendant explains that Plaintiffs drafted a set of discovery requests seeking information they had already had in their possession, including 700 pages of documents obtained in the related foreclosure action. (Doc. 43 at 4). Defendant admits that the discovery sought some new information about the FDCPA/RESPA claim, but it maintains that the time expended was unreasonable given that it sought and allegedly reviewed the same documents Plaintiffs already had in their possession. (*Id.*). Plaintiffs disagree that the requests were duplicative of discovery in the foreclosure action and, to the extent that some of the information may have been the same, a different review of that information was required in this case. (Doc. 44 at 2).

The Court finds Plaintiffs' argument has merit. Defendant itself admits additional questions were needed regarding the FDCPA and RESPA claims, and Plaintiffs were entitled to review the information in light of the particular claim in this case. Thus, the Court shall not recommend reducing the hours expended on written discovery on this basis.

*2. Initial Disclosures*

Plaintiffs request compensation for 5.1 hours for their initial disclosures, which Defendant argues is "simply list Plaintiffs' contact information, repeats the same subject of testimony for each listed witness, and computation of damages taken from their complaint." (Doc. 43 at 4). Plaintiffs defend their request in the same way as they defended their request

7

concerning written discovery, generally asserting that Defendant has not overcome the "strong presumption" that their time billed was reasonable. (Doc. 44 at 3). Based upon the limited content of Plaintiffs' initial disclosures (Doc. 43-1, Ex. D), the Court agrees that the requested fees are excessive. Consequently, the Court **RECOMMENDS** that the hours expended be **REDUCED** by 2.1 hours, allowing Plaintiffs to recover 3 hours for initial disclosures. *See Szeinbach*, 2017 WL 2821706, at *5 (holding that the Court should consider "whether the lawyer used poor judgment in spending too many hours on some part of the case.") (quoting *Coulter v. State of Tenn.*, 805 F.2d 146, 151 (6th Cir. 1986), abrogated on other grounds by *The Ne Coalition for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016)).

*3. Attorneys' Fees Motion*

Of the total of 181.19 hours billed by Plaintiffs' attorneys for this matter, 25.8 hours,[1] or approximately 14.2%, was spent preparing the original Motion for Attorneys' Fees (Doc. 36) and Reply brief in support (Doc. 38). (Doc. 43 at 5). Defendant, relying on *Coulter v. Tennessee*, 805 F.2d 146 (6th Cir. 1986), argues that "[i]n the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial." (Doc. 43 at 5). Accordingly, Defendant argues the hours Plaintiffs spent briefing the fee issue should be reduced to no more than 3% of the total allotted litigation fee awarded, or 5.4 hours. (*Id.*). Plaintiffs do not address the hours spent on the original fees briefing.

Defendant's reliance on *Coulter* is somewhat misplaced, as the Sixth Circuit recently abrogated *Coulter*'s presumptive cap for fees for fees awards. *See The Ne. Ohio Coal. for the Homeless*, 831 F.3d at 720. Reasoning that "[t]he presumptive cap mostly takes away the

---

[1] Defendant states that Plaintiffs billed 10.3 hours on their original motion for attorneys' fees and 15.3 hours for their reply brief in support, for a total of 25.6 hours. The Court, however, calculates that 10.5 hours were spent on the original motion for attorneys' fees, thus bringing the total to 25.8 hours.

8

discretion afforded to the district court" and that the policy goals for a cap on fee awards "lack a logical connection to the rule itself," the Court in *Northeast Ohio Coal. for the Homeless* abrogated the *Coulter* rule that previously limited the hours allowed for preparing and litigating attorneys' fees. *Id.* at 722–25. Instead, courts are directed to apply the *Hensley* reasonableness standard to the attorney fee stage of litigation, which requires consideration of the relationship between the amount of the fee awarded and the results obtained. *Id.* at 721–22 (citing *Hensley*, 461 U.S. 424 (1983)). More specifically, *Hensley* explains that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440.

With this in mind, the Court finds that a per se reduction of the hours expended briefing Plaintiffs' fee motion is inappropriate based on the abrogation of *Coulter*. Nevertheless, the Court finds that the hours expended preparing the motion was excessive given the $3,000 settlement and straightforward nature of the briefing. Moreover, the offer of judgment provided for the payment of statutory damages plus reasonable attorneys' fees, so preparing the motion and the reply "should not have required more than a minimum [amount] of legal research." *Farley v. Eaton Corp.*, 697 F. App'x 450, 451 (6th Cir. 2017) (spending 61.3 hours, or approximately 20% of the total time billed in the case, was "grossly excessive" and reducing the recoverable hours to ten). As was the case in *Farley*, "[t]he work should have been mostly non-legal, consisting primarily of tallying up and reviewing the hours spent" in this litigation. *Id.* Moreover, having reviewed the initial briefing for attorneys' fees, Plaintiffs did not make any novel arguments that would necessitate spending over twenty-five hours.

Thus, the Court **RECOMMENDS** that the hours expended be **REDUCED** by 13.8 hours, allowing Plaintiffs to recover 12 hours for the original attorneys' fees motion.

*4. The Complaint and Amended Complaint*

Defendant next argues that the 13.07 hours Plaintiffs spent on the Complaint and Amended Complaint are unreasonable because Doucet & Associates Co., L.P.A routinely files FDCPA and RESPA complaints. (Doc. 43 at 5). Additionally, Defendant alleges that Plaintiffs' Amended Complaint addressed the issues raised in Defendant's motion to dismiss, and it is not reasonable for Plaintiffs to recover fees for "work performed correcting their own mistake in a pleading." (*Id.*). For their part, Plaintiffs argue FDCPA and RESPA complaints require intensive review of many documents because the law is complex and intricate. (Doc. 44 at 2).

After a substantive review of the Complaint and Amended Complaint and the accompanying exhibits, the Court finds the hours expended to be reasonable and shall not recommend a reduction of the requested amount.

*5. Vague Entries*

Defendant argues generally that Plaintiffs' billing descriptions are too vague to determine whether they spent a reasonable amount of time on this case. (Doc. 43 at 6). Specifically, Defendant notes that "the fee report contains over a hundred entries with only the word 'communication' along with identifying who sent and received the email." (*Id.*). Because Plaintiffs did not indicate what the communications were about, Defendant argues the fees should be reduced. (*Id.*). Plaintiffs respond that the descriptions referred to by Defendant "[c]learly are emails and indicate the subject of the email" and are thus adequate to support the recovery. (Doc. 44 at 3).

The Court agrees with Plaintiffs. Counsel are "not required to record in great detail how each minute of his time was expended," but should at least "identify the general subject matter of [their] time expenditures." *Hensley*, 461 U.S. at 438, n. 12. By identifying the sender, recipient,

10

and subject matter of the emails, the Court finds that the billing descriptions are sufficient and shall not recommend a reduction on this basis.

### 6. Foreclosure Case

In the Court's October 23, 2017 Order, the District Judge held that Plaintiffs could not recover any attorneys' fees for work performed in the underlying foreclosure case. (Doc. 39 at 1). In so ruling, Plaintiffs' request for $1,053.90 associated with work on the foreclosure case was denied, and Plaintiffs were directed "to scrutinize the fee report prior to re-submission and to remove any fees associated with work performed in the foreclosure case." (*Id.* at 12). Despite this directive, Defendant alleges that Plaintiffs still included communications dealing with foreclosure case, rather than the pending federal case:

> Plaintiffs' counsel contacted the attorney for SLS on January 19, 2017 to request a copy of the executed load modification agreement which settled the foreclosure case. Affidavit of Ashley Mueller, ¶ 12. Plaintiffs' attorney then contacted SLS's attorney again on January 20, 2017 about the current mortgage payments. Affidavit of Ashley Mueller, ¶ 12. . . . SLS was able to identify those communications as being connected to the foreclosure case because its attorney was a party to some of the emails but it is almost impossible to identify the subject of the other emails with the vague descriptions.

(Doc. 43 at 6).

Consistent with Defendant's position, certain entries—specifically (1) 0.1 hours on January 19, 2017 for "communication amueller@johndclunk.com Morse/2016CV00492" and (2) 0.1 hours on January 20, 2107 for "communication amueller@johndclunk.com Morse/2016CV00492"—appear to relate to the foreclosure action, rather than this case. Because such entries violate the Court's October 23, 2017 Order and Plaintiffs have not disputed Defendant's claim that they relate solely to the foreclosure action, the Court **RECOMMENDS** that the hours expended be **REMOVED** from the lodestar calculation. *Szeinbach*, 2017 WL 2821706, at *2 (quoting *Hensley*, 461 U.S. at 433).

11

In sum, the undersigned recommends a reduction of the compensable hours by 16.1 hours. In its discretion, the Court recommends this reduction of hours equate to a $2,000 reduction in the total attorneys' fees requested.

## IV. CONCLUSION

Based on the discussion set forth above, the Court **RECOMMENDS** that the $37,192.87 in attorneys' fees sought be Plaintiffs be **REDUCED** by $7,438.57 in light of the appropriate hourly rate and by an additional $2,000 in light of hours unreasonably expended. Thus, it is **RECOMMENDED** that Plaintiffs be awarded $27,754.30 in attorneys' fees, and that the second Motion for Attorney Fees be **GRANTED IN PART and DENIED IN PART**. (Doc. 40).

### Procedure on Objections to Report and Recommendation

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.


Date: January 25, 2018                                              /s/ Kimberly A. Jolson
                                                                          KIMBERLY A. JOLSON
                                                                          UNITED STATES MAGISTRATE JUDGE